*In re* ESTATE OF ALEX J. SARRON, Deceased (Barbel Sarron, Claimant-Appellee, v. Darius Sarron, Adm'r, Appellant).

Third District   No. 3—99—1010

Opinion filed August 25, 2000.

David B. Radley (argued), of Baymiller & Radley, of Peoria, for appellant.

Julian E. Cannell (argued), of Kavanagh, Scully, Sudow, White & Frederick, P.C., of Peoria, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Claimant Barbel Sarron filed a claim against Alex J. Sarron's estate, seeking to enforce several Florida judgments for attorney fees stemming from their divorce. Appellant Darius Sarron, Barbel's son and the administrator of Alex's estate, filed objections. Barbel's claims were granted by the trial court. For the following reasons, we reverse and remand.

## FACTS

It appears from the record that Alex and Barbel were engaged in an ongoing divorce action in the State of Florida for several years. In March of 1982, a Florida court ordered Alex to pay Barbel's attorney, Melvin B. Frumkes, $40,000 in attorney fees and $4,245.18 in expenses. In August of that same year, the court ordered Alex to pay Frumkes an additional $5,500 for attorney fees and $1,000 in costs.

Alex filed bankruptcy in the Central District of Illinois early the next year. The bankruptcy court held that Alex's indebtedness to Frumkes in the amount of $44,215.18, stemming from the March 1982 judgment, was not dischargable. In March of 1983, the Florida court ordered Alex to pay Frumkes $2,500 in attorney fees. In April of 1983, the court ordered Alex to pay Frumkes $3,500 plus 12% *per annum* thereon. Those judgments were allegedly never paid.

In July of 1991, Frumkes assigned the judgments over to Barbel.

Attached to the assignment was a Florida court order dated January 11, 1988, directing Alex to pay $425 to Charter Hospital of Miami for Darius's medical care. These judgments were never registered with any circuit clerk in Illinois.

Alex died on January 14, 1998. His son, Darius, was appointed administrator of his estate. Barbel filed a claim against the estate in the amount of $57,140.18, based upon the judgments identified above. Darius filed written objections to the claim, but the trial court allowed it in full. Darius filed a posttrial motion in which he raised, for the first time, the Illinois five-year statute of limitations applicable to foreign judgments. That motion was denied and Darius appealed.

## ANALYSIS

Before deciding whether the trial court properly allowed Barbel's ·claim against Alex's estate, we must first determine whether Darius waived the statute of limitations defense by raising it for the first time in a posttrial motion.

■ When an argument is first brought to the trial court's attention by way of a postjudgment motion, the issue on appeal is whether the court abused its discretion in denying that motion. *Abbey Plumbing & Heating, Inc. v. Brown*, 47 Ill. App. 3d 719, 365 N.E.2d 115 (1977).

Barbel cites section 1—6 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/1—6 (West 1998)), which states that the Civil Practice Law (735 ILCS 5/2—101 *et seq.* (West 1998)) applies to all proceedings under the Probate Act, except as otherwise provided. Under the Civil Practice Law, an affirmative defense must generally be set forth in the reply to a claim or complaint or it is waived. *Shute v. Chambers*, 142 Ill. App. 3d 948, 492 N.E.2d 528 (1986).

■ It has long been the law in Illinois, however, that pleadings under the Probate Act are more relaxed in form than pleadings under the Civil Practice Law. The proceedings in a probate court for the presentation and allowance of claims are not governed by the technical rules that apply to formal suits at law. *In re Estate of Piper*, 59 Ill. App. 3d 325, 375 N.E.2d 477 (1978). Because no formal pleadings are required in the probate court, the statute of limitations applies even though not specially pleaded. *Bromwell v. Bromwell*, 139 Ill. 424, 28 N.E. 1057 (1891); *Marshall v. Coleman*, 187 Ill. 556, 58 N.E. 628 (1900).

Though *Bromwell* and *Marshall* were decided prior to the enactment of section 1—6 of the Probate Act, we find no case law and Barbel brings none to our attention indicating that those cases are no longer good law. Conversely, current cases exist which indicate that a claim filed in a probate proceeding is not a pleading and, thus, not

controlled by the technical rules which relate to pleadings. See, *e.g.*, *Piper*, 59 Ill. App. 3d 325, 375 N.E.2d 479; *In re Estate of Weaver*, 3 Ill. App. 2d 448, 122 N.E.2d 599 (1954). If a claim is not a pleading, then obviously a reply to a claim in a probate proceeding is similarly not a pleading. Thus, proceedings in probate are not subject to the rule that the statute of limitations must be set forth in the first responsive pleading by the defendant or it is waived. Accordingly, we hold that Darius did not waive the statute of limitations defense by raising it for the first time in a posttrial motion.

We turn now to the issue of whether the trial court erred when it held that Barbel's claim against Alex's estate was not barred by the Illinois five-year statute of limitations.

■ Prior to September of 1991, section 12—602 of the Uniform Foreign Money-Judgments Recognition Act (735 ILCS 5/12—602 (West 1998) (repealed by Pub. Act 87—358, eff. September 9, 1991)), provided for the registration of foreign judgments in Illinois. Under this section, an action to commence the registration of a foreign judgment was considered civil in nature and, because no specific statute of limitations covered such an action, the general five-year statute of limitations set forth in section 13—205 of the Illinois Code of Civil Procedure (Civil Code) applied. See 735 ILCS 5/13—205 (West 1998); *Vrozos v. Sarantopoulos*, 195 Ill. App. 3d 610, 552 N.E.2d 1093 (1990).

In 1991, the Illinois legislature repealed sections 12—601 through 12—617 of the Uniform Foreign Money-Judgments Recognition Act and enacted the Uniform Enforcement of Foreign Judgments Act (Foreign Judgments Act) (735 ILCS 5/12—650 *et seq.* (West 1992)). Section 12—652 of the Foreign Judgments Act provides that a foreign judgment filed in the office of the circuit clerk for any county in Illinois has the same effect and is subject to the same procedures as a judgment of a circuit court in any county in Illinois. 735 ILCS 5/12—652 (West 1998).

Though the Uniform Foreign Money-Judgments Recognition Act was repealed in 1991, the five-year statute of limitations utilized by that act still applies to foreign judgments rendered prior to 1991. See *In re Marriage of Kramer*, 253 Ill. App. 3d 923, 625 N.E.2d 808 (1993). This is because subsequent legislation shortening or extending a statute of limitations cannot be applied retroactively to a cause of action unless the legislature indicates otherwise, which it did not do within the Foreign Judgments Act. *Kramer*, 253 Ill. App. 3d at 928, 625 N.E.2d at 813.

In *Kramer*, the plaintiff filed a petition in 1992 seeking to register a 1974 Nebraska divorce decree in which her ex-husband was directed to pay child support. The appellate court held that her claim was

barred by the five-year statute of limitations in effect at the time the divorce decree was rendered. *Kramer*, 253 Ill. App. 3d at 928, 625 N.E.2d at 813. The subsequent extension of the statute of limitations after 1991, pursuant to the Foreign Judgments Act, could not revive the plaintiff's cause of action because it was previously barred under the five-year statute of limitations. *Kramer*, 253 Ill. App. 3d at 928, 625 N.E.2d at 813.

■ Barbel's Florida judgments against Alex for attorney fees were all rendered on or before April 13, 1983. A Florida judgment in the amount of $425 for hospital expenses for Darius was rendered January 11, 1988. Accordingly, the judgments against Alex were subject to the five-year statute of limitations in effect prior to 1991. Because Barbel failed to register those judgments in Illinois within five years of the time they were rendered, they are now barred.

Barbel argues that because this is a probate proceeding she does not have to register her Florida judgments in Illinois pursuant to section 12—652 of the Foreign Judgments Act (735 ILCS 5/12—652 (West 1998)) and, accordingly, her judgments are not subject to the Illinois five-year statute of limitations. Rather, she argues they are subject only to the Florida 20-year statute of limitations. A similar argument was made by the petitioner in *King v. Hanson*, 192 Ill. App. 3d 966, 549 N.E.2d 757 (1989).

In that case, the petitioner filed a claim in Illinois in 1987 against her ex-husband's estate for unpaid alimony and support payments ordered by a Minnesota court dating back to 1977. The claim was never registered in Illinois. Petitioner alleged that the claim was subject to the Minnesota 10-year statute of limitations rather than the Illinois five-year statute of limitations. *King*, 192 Ill. App. 3d at 969, 549 N.E.2d at 759.

Respondents argued that because the claim was filed in Illinois, that was tantamount to the registration of a foreign judgment and therefore the statute of limitations in Illinois should govern. The appellate court disagreed stating simply, "[w]e note that the procedural formalities which are attendant to the registration of a foreign judgment are not present here." *King*, 192 Ill. App. 3d at 970, 549 N.E.2d at 760.

We find *King* distinguishable. The respondents in *King* admitted to the existence of the Minnesota decree and agreed to proceed on the claim under the Probate Act (755 ILCS 5/1—6 (West 1998)), apparently in order to obviate the petitioner's problem in enrolling the Minnesota judgment. *King*, 192 Ill. App. 3d at 971, 549 N.E.2d at 760. To the extent that *King* differs from this case we decline to follow it. Rather, it is the decision of this court that plaintiffs who hold out-of-

state judgments should not be able to circumvent the Illinois statute of limitations by seeking enforcement of their claim in a probate court rather than in the circuit court as anticipated by section 12—652 of the Foreign Judgments Act.

In the alternative, Barbels cites to *Light v. Light*, 12 Ill. 2d 502, 509, 147 N.E.2d 34, 39 (1957), for the proposition that the "vitality of the foreign judgment is to be determined as of the date that it is registered" in Illinois. That statement was made in the *Light* decision in reference to the defendant's contention that the plaintiff could not maintain her action in Illinois to enforce a Missouri divorce decree because a Missouri statute provided that no such action could be maintained after the lapse of 10 years. While the plaintiff had commenced the action well within the 10-year period, it was not concluded until after that period had lapsed. *Light*, 12 Ill. 2d at 506, 147 N.E.2d at 37. Accordingly, the court found that the Missouri decree was not barred by the Missouri statute of limitations.

The *Light* court also applied the five-year statute of limitations for actions on foreign judgments but determined that it did not bar the plaintiff's claim either, because, where a judgment is for periodic payments, a right of action accrues and the statute of limitations begins to run on each installment when it becomes due. The plaintiff in *Light* attempted to register only those unpaid installments that came due within the five years that immediately preceded the filing of the application to register the judgement. *Light*, 12 Ill. 2d at 506, 147 N.E.2d at 37. Thus, the court concluded that the plaintiff was similarly not barred from registering the Missouri decree based upon the Illinois statute of limitations. A careful reading of the *Light* decision reveals that it is not contrary to *Kramer* or to our decision here.

Accordingly, we hold that Darius did not waive the statute of limitations defense by raising it in a posttrial motion and that Barbel's claim against Alex's estate is barred by the five-year statute of limitations in effect at the time the underlying judgments were rendered.

For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed and this cause is remanded for further proceedings consistent with this order.

Reversed.

SLATER, P.J., and HOLDRIDGE, J., concur.